IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MICHAEL JEROME CARTER,

    Plaintiff,

vs.                                        No. 07-2260-B/P

PINK PALACE MUSEUM, et al.,

    Defendants.

_____

ORDER ASSESSING $350 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

_____

On April 16, 2007, Plaintiff Michael Jerome Carter, RNI number 94992, an inmate at the Shelby County Correctional Center ("SCCC")[1] in Memphis, Tennessee, filed a _pro se_ complaint pursuant to 42 U.S.C. § 1983. The Clerk shall record the defendants as the Pink Palace Museum and Shelby County.[2]

I.    <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing civil actions must pay the full filing fee of $350 required by 28 U.S.C. § 1914(a). The _in_

---

[1] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

[2] The Court construes the allegation about the SCCC as an attempt to assert a claim against Shelby County.

forma pauperis statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted an in forma pauperis affidavit and a certified copy of his trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in Plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to

Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

> Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the Director of the SCCC to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II. <u>Analysis of Plaintiff's Claims</u>

The complaint alleges that, on or about April 13, 2006, Plaintiff was part of an inmate work crew at the Pink Palace Museum. As he was operating a gas-powered hedge trimmer, he was stung by a wasp, causing him to drop the trimmer on his leg.

As compensation for his pain and suffering, Plaintiff asks that his criminal fine be waived and his driver's license reinstated.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>    (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>    (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); <u>see also</u> 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.[3]

The Eighth Amendment prohibits cruel and unusual punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). An

---

[3] As a preliminary matter, "[i]n order to be subject to suit under § 1983 claim, defendant's actions must be fairly attributable to the state." <u>Collyer v. Darling</u>, 98 F.3d 211, 231-32 (6th Cir. 1997). The various actions alleged by Carter to have been undertaken by First Tennessee and First Horizon do not violate the Fourteenth Amendment because they are not state actors. <u>Brotherton v. Cleveland</u>, 173 F.3d 552, 567 (6th Cir. 1999) ("A § 1983 plaintiff may not sue purely private parties."). As the Pink Palace Museum is operated by the City of Memphis, http://www.memphismuseums.org/, the Court will assume, for purposes of this order, that it can properly be used under § 1983.

Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'"  Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm

5

will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993).

As a preliminary matter, the complaint does not allege the objective component for an Eighth Amendment violation. The complaint alleges that Plaintiff was assigned to perform outdoor landscaping work on the grounds of a public museum, that he operated a hedge trimmer, and that he was stung by a wasp. The situation, as described by Plaintiff, is not dissimilar to that encountered on a regular basis by any homeowner who maintains his own yard or by any of the numerous private individuals employed as landscape workers. This allegation does not approach the type of sustained exposure to unsanitary or hazardous conditions that may violate the Eighth Amendment. Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999) ("That Palmer may have missed one meal and may have endured irritating insect bites without immediate medical attention does not rise to the level of a cognizable constitutional injury.").[4]

---

[4]  Courts have generally rejected Eighth Amendment claims based on inmates' exposure to the elements while working outside. See, e.g., Moore v. Moore, 111 F. App'x 436, 438 (8th Cir. 2004) (per curiam) (rejecting claim that requiring inmate to work outside picking up refuse from the prison yard violated the Eighth Amendment); Snipes v. Ward, 180 F.3d 263 (5th Cir. 1999) (per curiam) (allegation that inmate forced to work outside in freezing temperatures without gloves does not establish an Eighth Amendment violation); Trevino v. Jones, No. 06-CV-0257-CVE-FHM, 2007 WL 710213, at *7 (N.D. Okla. Mar. 6, 2007) (allegation that prisoner worked outside in the cold for eight-hour shifts for five consecutive days insufficient to violate Eighth Amendment); Pendergrass v. Hannigan, 788 F. Supp. 488, 489 (D. Kan. 1992) (forcing inmate to work outside during winter months does not violate Eighth Amendment where he was provided appropriate clothing). The Fifth Circuit in Palmer, 193 F.3d at 352, found the
(continued...)

The complaint also fails to establish the subjective component of an Eighth Amendment violation. To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a prisoner must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

---

⁴ (...continued)
complaint alleged a viable Eighth Amendment claim where inmates on work crew were required to sleep outside without shelter, jackets, or blankets in cool temperatures, and who were not permitted adequate bathroom breaks.

Id. at 837-38 (emphasis added; citations omitted); see also Lewellen v. Metropolitan Gov't of Nashville & Davidson County, 34 F.3d 345, 348 (6th Cir. 1994) ("[T]he defendants obviously did not make a deliberate decision to inflict pain and bodily injury on the plaintiff. The defendants may have been negligent, but it is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest.").

In this case, the complaint does not allege that any employee of the SCCC was deliberately indifferent to a serious risk that Plaintiff would be injured. There is no allegation, for example, that Plaintiff's supervisor told Plaintiff to operate his hedge trimmer at a particular location, which he knew was in the immediate vicinity of a wasp's nest. The complaint does not even allege that any employee of the SCCC or the Pink Palace was negligent.

Even if the complaint were to state a claim against some unknown SCCC employee, who is not a party to this action, it does not follow that Shelby County, or the City of Memphis, is liable to Plaintiff. A local governmental entity "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992); see also Jett v. Dallas Indep. School Dist., 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental

bodies); City of Canton v. Harris, 489 U.S. 378, 388 (1989) (rejecting simple vicarious liability for municipalities under § 1983); City of St. Louis v. Praprotnik, 458 U.S. 112, 122 (1988) (interpreting rejection of respondeat superior liability by Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978), as a command that "local governments . . . should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (same); Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims against city and county and holding that "in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality"). To establish a basis for governmental liability, a plaintiff must demonstrate

> (1) that the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of persons affected by the policy or custom.

Haverstick v. Financial Fed. Credit, Inc., 32 F.3d 989, 996 n.8 (6th Cir. 1994) (citing City of Canton, 489 U.S. at 387-88). Thus, "'a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."'" Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir. 1994) (citations omitted). Plaintiff's complaint, even construed liberally, Haines v. Kerner,

9

404 U.S. 519 (1972), does not allege that his injury was caused by an unconstitutional policy or custom of Shelby County or the City of Memphis.

The Court therefore DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. In light of the dismissal of the complaint, the motion for appointment of counsel is DENIED as moot.

III. Appeal Issues

The next issue to be addressed is whether Plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on Defendant, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff is not

taken in good faith and Plaintiff may not proceed on appeal <u>in forma pauperis</u>.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case.[5] In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in <u>McGore</u> and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this 21st day of August, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[5] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.